IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re THOMAS OLICK,<br>      Debtor. | : <br> : <br> : |
| THOMAS OLICK,<br>      Plaintiff-Appellant, | : <br> : <br> : |
| v. | :     CIVIL ACTION NO. 13-3158 |
| City of Easton *et al.*,<br>      Defendants-Appellees. | : <br> : <br> : <br> : |

**MEMORANDUM**

YOHN, J.                                                                                                October 8, 2013

     This bankruptcy appeal arises from an adversary proceeding brought by Thomas Olick against the City of Easton, Northampton County, Portnoff Law Associates Ltd., Sal Panto, Howard White, and William Murphy.[1] Olick appeals from the bankruptcy court's March 8, 2013 order making findings of fact detailing the provisions of the parties' settlement reached on December 13, 2012 and articulated in open court on the record that date.[2] Olick claims that the bankruptcy court

---

    [1]Olick is no stranger to the bankruptcy court or this court. According to the defendants' brief he has filed seven bankruptcy cases in the bankruptcy court beginning in 1993 and no less than fifty-eight adversary cases dating back to 1996. He has filed twenty-three appeals in this court beginning in 1996.

    [2]Olick and all defendants in the underlying adversary proceedings, except for Northampton County, were parties to the settlement conference held on December 13, 2012; and thus Northampton County is the only defendant in those proceedings to which the March 8, 2013 order does not apply. (Appellant's Br. in Supp. of Mot. to Appeal ("Appellant's Br.") Ex. 1, Tr. of Dec. 13, 2012 Settlement Conference ("Dec. 13, 2012 Tr.") at p. 7.) Accordingly, this memorandum applies to all defendants except Northampton County, and when I refer to the "defendants", I am referring to all defendants listed in Olick's underlying adversary proceedings except for Northampton County.

erred because: (1) the December 13, 2012 settlement was only a tentative settlement and not final, and (2) the March 8, 2013 order included a nonparty, the Olick Family Trust, that was not a party to the agreement. For the reasons that follow, I will affirm the bankruptcy court's March 8, 2013 order.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

The March 8, 2013 order sets forth the details of the December 13, 2012 settlement between Olick and the defendants. As litigation between the parties is extensive, there are numerous bankruptcy court and state court actions that are part of the March 8, 2013 settlement order that Olick is appealing; accordingly, I have detailed them below.

Olick filed the underlying bankruptcy case under docket number 07-10880 on February 9, 2007. (Bankr. No. 07-10880, Doc. No. 1.) On June 8, 2012, Olick initiated an adversary proceeding in the bankruptcy court against the City of Easton, docketed as Adv. No. 12-00444. On October 10, 2012, Olick initiated an additional adversary action against the defendants, including Northampton County, docketed as Adv. No. 12-00628, by removing an action then pending in the Court of Common Pleas of Northampton County, Pennsylvania. Olick initiated the underlying adversary proceeding, docketed as Adv. No. 12-00631, on October 11, 2012. The December 13, 2012 settlement hearing was initiated to discuss these three adversary proceedings. (Appellant's Br. Ex. 1, Dec. 13, 2012 Tr. at p. 6.)

---

[3] Except as otherwise noted, the following facts are undisputed and are drawn largely from the bankruptcy court's March 8, 2013 order. While plaintiff appeals the order, he does not contest any factual recitations from the numerous bankruptcy court proceedings. Olick only argues that the March 8, 2013 order is invalid because the December 13, 2012 settlement was tentative and that the Olick Family Trust was not a party to the settlement.

Before Olick filed the above adversary actions against the defendants, he had already filed three adversary proceedings in the bankruptcy court. The first proceeding–docked as Adv. No. 08-00264–was filed by Olick on or about September 22, 2008, against the City of Easton, the Northampton County Tax Claim Bureau, Easton Area School District, and Northampton County. On July 27, 2009, Olick initiated an adversary proceeding against the City of Easton and Becky Bradley, docketed as Adv. No. 09-00235. Olick initiated an adversary proceeding on October 7, 2009, against the City of Easton, Northampton County, Palmer Township, and Easton Area School District, which was docketed as Adv. No. 09-00312.

In addition to the bankruptcy court proceedings, before the December 13, 2012 settlement conference, Olick, the defendants, and certain other parties including the Olick Family Trust and David and Matthew Olick ("Olick's sons"), were litigants in various actions pending in the Court of Common Pleas of Northampton County, Pennsylvania, and the Commonwealth Court of Pennsylvania (hereinafter jointly referred to as the "State Court Litigation").

The above adversary actions in bankruptcy court and the State Court litigation all involve real estate tax issues surrounding two properties located in Easton, Pennsylvania: 1209-15 Chidsey Street (which Olick has described as the "Lot"), and 1220-22 Chidsey Street (which Olick has described as the "Rental Property"). (Appellant's Br. at 1.) While neither party details the facts surrounding the litigation for the taxes on these two properties, it seems that the City of Easton brought actions against Olick, the Olick Family Trust, and Matthew and David Olick, for delinquent real estate taxes on the Lot and the Rental Property. (*Id.*) In his adversary proceedings, however, Olick claims that the City of Easton "has been misapplying and/or failing to credit the real estate tax payments made on the Plaintiff's Properties." (Appellant's Reply Br. in Supp. of Mot. to Appeal ("Appellant's Reply

3

Br.") at. 1.) Olick states, without documentary proof, that he and the Olick Family Trust– for which he is the Trustee and his children Matthew and David Olick are the beneficiaries– are the owners of the Lot. (*Id.*) Olick claims that he and Matthew and David Olick are the owners of the Rental Property.[4] (*Id.*)

On December 13, 2012, the bankruptcy court held a settlement conference for the three recent adversary proceedings: Adv. No. 12-00444, Adv. No. 12-00628, and Adv. No. 12-00631. (Appellant's Br. Ex. 1, Dec. 13, 2012 Tr. at p. 6.) Olick and two attorneys representing all defendants, except for Northampton County, in the three recent adversary actions were present at the settlement conference. (*Id.* at p. 6-7.) The bankruptcy judge specifically noted that Northampton County was not a party to the settlement conference and thus, the settlement would not apply to Northampton County. (*Id.* at p. 7.) The bankruptcy judge spoke with Olick and the parties off the record for a significant amount of time to discuss settlement, which was eventually achieved. (*Id.*)

After the off-the-record discussion, the bankruptcy judge placed the agreement on the record and stated that "the purpose of going on the record at this point is to put on the record that a settlement has been achieved." (*Id.*) He then detailed what was going to occur on the record by stating, "What I will do is, I will put on the record what I understand the terms of the settlement, and give the parties a chance to comment, correct, or hopefully affirm that I've accurately stated the settlement." (*Id.* at p. 8.) The bankruptcy judge then stated what the terms of the settlement were to resolve Olick's claims in the three recent adversary proceedings–Adv. No. 12-00444, Adv. No. 12-00628, and Adv. No. 12-00631. Specifically, the bankruptcy judge explained that the terms included

---

[4] In his reply brief, Olick alleges that his sons, David and Matthew, were minors when they purchased the Rental Property, and accordingly Olick acted as their trustee until they "became 'adults.'" (Appellant's Reply Br. at. 2.)

the City of Easton writing a check to Olick for the amount that Easton had claimed Olick owed in delinquent real estate taxes through 2011. Then Olick would return the check to the City of Easton. (*Id.* at p. 8-9.) The City of Easton would also pay Olick one hundred dollars, and it would not be allowed to collect the real estate taxes on the Lot and the Rental property through 2011 that were subject to the settlement. (*Id.*)

The bankruptcy judge and the parties discussed how the settlement would effect the other proceedings regarding the real estate taxes on the Lot and the Rental Property, including the State Court Litigation. The colloquy is as follows:

> Mr. Daday: I would have to actually check the dockets, Your Honor, because I know he filed a couple of different actions.
>
> The Court: All right. You would agree, Mr. Olick, just for the sake of the record, that this is a settlement of all of the disputes relating to the taxes on this property?
>
> Mr. Olick: My understanding is this is entered into as a general mutual release for the parties of each other.
>
> The Court: It isn't really a generalized release.
>
> Mr. Olick: Regarding the taxes.
>
> The Court: [The settlement] is a release of specific related disputes; that is, the disputes dealing with the claim of the City that you disputed that there were delinquent taxes on the two Chidsey Street properties. That's what's being settled here. And so the record's clear, you are agreeing that based on the consideration you were receiving, that I've been describing, not only will the Bankruptcy Court Adversary proceedings be terminated as to the City and City-related Defendants, but the Commonwealth Court of Appeal will be terminated in whatever manner it takes, and if there are any State Court actions raising the same claims, that were not removed to the Bankruptcy Court, that they, too will be withdrawn. Is that - - you're agreeable to that?
> . . . .
>
> Mr. Olick: Yes, that's my understanding. . . .

> Mr. Olick: I'm not aware of any other [cases].
>
> The Court: All right. But if there are, you're willing to cooperate in them being withdrawn?
>
> Mr. Olick: Anything involving taxes.

(*Id.* at p. 12-13.) The defendants noted that they needed to get the settlement approved by the City Council for the City of Easton, which would have to take place at a future city council meeting. (*Id.* at p. 13.) Subsequently, the bankruptcy judge stated that he would issue an order stating that the adversary proceedings had been settled and requested that the City of Easton draft a document to "memorialize" the settlement that had just occurred. (*Id.* at p. 14-15.)

On December 14, 2012, the bankruptcy court filed an order stating that the parties had reached "a global settlement" . . . "the substance of which was put on the record in open court."

In his March 8, 2013 order, the bankruptcy judge explained that the parties had been unable to reduce to writing the terms of the settlement agreement reached on December 13, 2012. (*Order, Olick v. City of Easton*, Case No. 12-00631-elf (Bankr. E.D. Pa. Mar. 8, 2013), ECF No. 37, hereinafter referred to as "Mar. 8, 2013 Order".) Accordingly, in his March 8, 2013 order, the bankruptcy judge memorialized the December 13, 2012 settlement agreement in detail by making findings of fact as to the settlement after reviewing the written submissions of the parties and the transcript of the December 13, 2012 settlement conference. (*Id.*)

The order referred to the three adversary proceedings pending in the bankruptcy court, three actions pending in the Northampton County Court of Common Pleas and one action in the Commonwealth Court of Pennsylvania. The court stated that the parties had been unable to reduce to writing the terms of the settlement agreement that was placed on the record on December 13, 2012

and it therefore made findings of fact that all of the above litigation has been settled on the terms set forth therein, which basically incorporated the terms of the colloquy on December 13, 2012. After payment of the various amounts previously agreed to, it ordered Olick and the Olick Family Trust, as well as the defendants (other than Northampton County) to exchange releases and the state court litigation to be discontinued.

Subsequently, Olick filed a motion to reconsider the March 8, 2013 order. Olick argued that the bankruptcy judge abused his discretion when he included the Olick Family Trust (the "Trust") in the release section, which released all of the defendants from any claims the Trust currently had or could have with regard to the allegations made in the adversary bankruptcy proceedings and the State Court Litigation. (Motion for Recons. from Judgment Adv. No. 12-00631, ECF No. 41 ("Mot. for Recons.") at 1.) Olick claimed that the Olick Family Trust was not a party to the bankruptcy adversary proceedings, and thus, the bankruptcy judge changed the terms of the December 13, 2012 settlement by including the trust in the March 8, 2013 order. (*Id.*)

The bankruptcy judge denied Olick's motion for reconsideration in an order issued on March 20, 2013. *Order, Olick v. City of Easton*, Case No. 12-00631-elf (Bankr. E.D. Pa. Mar. 20, 2013), ECF No. 44, hereinafter referred to as "Mar. 20, 2013 Order".) The bankruptcy judge stated:

> The primary ground for reconsideration asserted was that the settlement encompassed the rights of a non-party, the Olick Family Trust. However, it was absolutely clear to the court from the tenor and specific content of the discussions held with the parties that the settlement was intended to be a global settlement, resolving all claims of all parties relating to the taxes allegedly owed on the subject real property for the tax years in question. The settlement was intended to end **all litigation**. The plaintiff's suggestion that the March 8, 2013 [order] misstated the settlement because the parties intended to permit the Olick Family Trust (an entity controlled by the Plaintiff) to retain claims against the Defendants is disingenuous.

(*Id.* at 1.) Olick subsequently appealed the March 8, 2013 order making findings concerning the

settlement agreement to this court. Olick raises two main issues for appeal; he claims that the bankruptcy court erred because: (1) the December 13, 2012 settlement was only a tentative settlement, and (2) the March 8, 2013 order encompassed the rights of a non party, the Olick Family Trust. (Appellant's Br. at 3-4.)

## II.     STANDARD OF REVIEW

The district courts have jurisdiction to hear appeals from final judgments and orders of the bankruptcy courts. Under the Federal Rules of Bankruptcy Procedure, a district court, sitting as an appellate tribunal, "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. In so doing, the district court applies a clearly erroneous standard to review a bankruptcy court's factual findings and a *de novo* standard to review its conclusions of law. *See In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994).

## III.    DISCUSSION

Olick first argues that the December 13, 2012 settlement was merely tentative. (Appellant's Br. at 5.) Olick claims that the settlement was tentative because it still had to be approved by the City Council for the City of Easton. (*Id.*) Olick explains that the December 13, 2012 settlement was never approved by the City Council, and instead defendants sent him a "counteroffer" that included language that released the defendants from any of the Trust's claims. (*Id.*) Olick refused to sign the "counteroffer" because it released the defendants from any claims that the Trust may have had that related to the taxes on the Lot and the Rental Property. (*Id.*)

Defendants argue that the December 13, 2012 settlement was not a tentative settlement and was intended to bind the parties as long as the City Council subsequently agreed to the terms. (Appellees' Br. at 1-2.) Defendants explain that the City Council agreed to the settlement terms on

March 13, 2013, and have attached the minutes from the City Council's meeting on that date to their brief. (*Id.*)

After reviewing the minutes it is clear that the settlement with Olick was unanimously adopted by the City Council. (Appellees' Br. at Ex. A, p. 8.) Additionally, it is clear that the bankruptcy court judge found that the December 13, 2012 settlement was not "tentative." In the transcript from the December 13, 2012 hearing, the bankruptcy court explicitly stated that a settlement had been reached. (Appellant's Br. Ex. 1, Dec. 13, 2012 Tr. at p. 7.) On December 14, 2012, the bankruptcy court issued an order stating that, during the December 13, 2012 settlement conference, plaintiff and the defendants "reached a global settlement encompassing a resolution of the claims . . . ." *(Order, Olick v. City of Easton*, Case No. 12-00631-elf (Bankr. E.D. Pa. Dec. 14, 2012), ECF No. 13.) Finally, the March 8, 2013 order making findings as to the terms of the settlement specifically states that Olick and the defendants reached a global settlement on December 13, 2012. (Mar. 8, 2013 Order, 2.)

The bankruptcy court's finding that on December 13, 2012, the parties reached a global settlement is a finding of fact, and, accordingly, I must apply a clearly erroneous standard to that finding. Olick only baldly asserts that the settlement was tentative and puts forth no evidence to prove his assertion other than his claim that City Council had to agree to the terms. It did. As in any case involving a municipality, the governing body must approve or authorize the settlement of such claims. Accordingly, I find that the bankruptcy court's finding that a settlement had been reached and confirmed by the parties was not clearly erroneous. Thus, I will affirm the bankruptcy court's

finding in its March 8, 2012 order that a settlement was reached on December 13, 2012.[5]

Olick's final argument is that the March 8, 2013 order should not have released the defendants from any litigation related to the tax issues on the Lot and Rental Property brought by the Trust, because the Trust was not a party to the underlying adversary actions in the bankruptcy court. To support his argument, Olick points to the testimony from the December 13, 2012 settlement conference, and notes that the bankruptcy court did not refer to the Olick Family Trust but instead stated, "The settlement will resolve all claims that Mr. Olick has against the City of Easton . . . ."[6]

Olick made this exact argument to the bankruptcy judge is his motion for reconsideration. In his March 20, 2013 order, the bankruptcy judge rejected Olick's argument that the Olick Family Trust was not part of the settlement. The bankruptcy judge explained that " it was absolutely clear to the court from the tenor and specific content of the discussions held with the parties that the settlement was intended to be a global settlement, resolving all claims of all parties relating to the taxes allegedly owed on the subject real property. . . . The settlement was intended to end **all litigation**." (Mar. 20, 2013 Order, 1.) Additionally, he noted that the Olick Family Trust is controlled

---

[5] Even if the bankruptcy judge's conclusion that the parties reached a settlement on December 13, 2012, was a conclusion of law, I would still affirm the March 8, 2013 order. As stated in the fact section of this memorandum, both parties agreed to be bound by the settlement on December 13, 2012, and defendants established that the City Council approved the settlement on March 13, 2013.

[6] Olick points out that he and his sons, David and Matthew, are the owners of the Rental Property, not the Olick Family Trust. As the bankruptcy court did not include language explicitly releasing the defendants from claims brought by David and Matthew Olick regarding the real estate taxes on the Rental Property in its March 8, 2013 order, I cannot decide whether those parties were subject to the December 13, 2012 settlement. The record and briefs do not contain the ages of the sons on December 13, 2012. If they were minors at that time, the consent of Olick to the settlement, as their parent and natural guardian, would bind them. However, if they had reached the age of majority, neither party has submitted any evidence as to their position on the settlement.

by Olick, as he is the Trustee. (*Id.*) Accordingly, he found that Olick's argument was disingenuous. (*Id.*)

The bankruptcy judge's finding that the December 13, 2012 settlement included a release of the Olick Family Trust's claims against defendants relating to the taxes owed on the Lot and the Rental Property is a finding of fact, and accordingly I must apply a clearly erroneous standard to that finding. While Olick is correct that the Olick Family Trust is not mentioned in the December 13, 2012 testimony that is on the record, the bankruptcy judge noted that he had discussed the settlement with the parties, and in fact reached a settlement with the parties, before they went on the record. Additionally, the testimony on the record stated that it was a global settlement that dismissed all disputes dealing with all claims about the taxes on the Lot and the Rental Property. (Appellant's Br. Ex. 1, Dec. 13, 2012 Tr. at p. 12-13.) Olick confirms that he was the Trustee of the Trust and does not deny that he has the authority to act on behalf of and bind the Trust for purposes of a settlement agreement. As such, he had the authority to bind the Trust to the settlement. The settlement was represented as a global settlement of all of the tax issues in all of this litigation, state and federal. As the Trustee, he had the authority to consent to that settlement on behalf of the Trust and did so. Olick correctly points out that he could not act as counsel for the Trust. But he did not act as counsel. He acted as the Trustee, just as he acted for himself as an individual. A trustee can make an agreement on behalf of the trust without having legal representation. Accordingly, I find that the bankruptcy judge's finding that the Olick Family Trust released its claims against the defendants relating to the real estate taxes on the Lot and the Rental Property was not clearly erroneous. Therefore, I will affirm that bankruptcy court's March 8, 2013 order.

**IV.     CONCLUSION**

       For the reasons set forth above, I will affirm the bankruptcy court's March 8, 2013 order. An appropriate order accompanies this memorandum.